## SUPREME COURT.

HERMAN BACHARACH and another, respondents, agt. ALFRED
E. LAGRAVE, impleaded, &c., appellant.

*Extradition of fugitive from justice — prisoner's right to unrestrained liberty
after acquittal.*

A person who has been surrendered by a foreign government, under an
extradition treaty, for the commission of a crime here, coming within
the treaty stipulation, has a clear and absolute right to return to the
country from which he was taken, after the purposes of justice have
been satisfied as to the particular offense for which he was surrendered.

No other principle than that securing immunity from arrest for causes not
provided for by the treaty, can either fairly or reasonably be deduced
from the purposes and provisions of the constitution and laws of the
United States relating to the removal of offenders from one state to
another.

*First Department, General Term, May,* 1874.

APPEAL from order denying motion to vacate order of
arrest.

*Charles W. Brooke,* for appellant.

*D. M. Porter and L. A. Gould,* for respondents.

DANIELS, J.—The defendant applied to have the order for
his arrest vacated, because he had been brought into the United
States as a fugitive from justice, under the extradition treaty
existing between this country and France. He was arrested
under the order before he could return to France, and while
he was still in custody. After such arrest he gave bail, and

in that manner secured his discharge. This circumstance is now relied upon, by way of answer to his application, as a waiver of his right to the relief asked for. And many authorities are cited by the plaintiff's counsel holding that an appearance in the action, even though informal, will be attended with the effect of waiving irregularities in the means made use of to bring the defendant into court. That principle, as a general proposition, is very well settled; but it does not follow from it that the defendant's application should be denied for that reason. What he particularly complains of now is, not the means or process by which he was brought into court, but the restraint imposed upon his person by the order of arrest. And among all the authorities relied upon, but one in any way affects the consideration of that point, and that is the case of *Petrie* agt. *Fitzgerald* (1 *Daly*, 405). In that it was held that a party arrested on the way from court, which he had attended as such, waived his right to be discharged, on the ground of his privilege, by giving bail in the action. This was held by the court as the result justified by the authorities, although very well considered cases were referred to, inconsistent with that view. And the conclusion was sustained because the order was not assailed, but the arrest made under its authority at a time when it could not be enforced (*Id.*, 407).

In the present case the order is assailed, not simply on the ground of a mere privilege, but because of the implied guaranty offered by the treaty that the defendant should be freely allowed to return to the country from whence he was brought, in pursuance of its provisions, for the sole and only purpose of being tried upon a specified criminal offense. Such a claim, it was held, in the case of *Williams* agt. *Bacon* (10 *Wend.*, 636), was not within the rule privileging suitors and witnesses from arrest whilst going to, attending at and returning from court. And while the application then made for the discharge of the order and the arrest under it were denied, it was not done because the right had been in any

Bacharach agt. Lagrave.

way jeopardized or lost by the proceedings taken in the case.

The provision of the Code upon this subject is comprehended in very general terms. It allows a party arrested on an order to apply on motion to vacate the order of arrest at any time before judgment, and even after that, where the arrest may be made less than twenty days before its recovery (*Code*, §§ 204, 183). These provisions contain no restriction as to the ground on which the application may be made; and the right secured by them is in no way rendered dependent upon the circumstance that no appearance may have previously been made in the action by the applicant; neither do they discriminate in any respect as to the grounds on which the discharge of the order may be applied for. The remedy is general in its nature; sufficiently so to include the protection of every possible right the defendant may be able to show in favor of his exoneration from the proceeding taken to arrest him; and, under its general nature, the motion may be made and maintained whenever it can be successfully shown that no right to the order and arrest, under the circumstances, existed after bail has been given, even though that may not be done in support of a mere personal privilege. Modern legislation in this state has been repeatedly changed for the purpose of facilitating the right of arrested parties to secure their discharge on bail, and afterward also by motion, where the right of arrest can be shown not to exist; and it is the duty of the courts to place no needless obstacle in the way of parties applying for the benefit of the provisions made in their favor, but to maintain and apply them in the spirit that has led to their enactment. Under these provisions no reason is apparent for including one case within them and excluding another from them, where the party arrested can show a positive right to be set at liberty. They were enacted for the purpose of protecting persons in the complete enjoyment of that right, when its existence can be satisfactorily maintained, without discrimination as to the

Bacharach agt. Lagrave.

peculiar reason on which it may appear to depend. Whether this should extend so far as to include the protection of a mere personal privilege, after bail has been given and a discharge secured in that manner, it is not designed at this time to decide. But where the law has secured an absolute right to exemption from arrest, the case is manifestly different, and within the protection of the provisions of the Code allowing the motion to be made after bail has been given.

The objection must, therefore, be considered and disposed of which has been presented in the defendant's behalf, whether an order for his arrest was proper under the circumstances shown in support of the present application. It may be properly assumed, in the disposition of it, that he was a fugitive from justice, residing in the French republic, and only amenable to the laws of this state by force of the extradition remedy provided for by the treaty. Without the provision made he could not have been brought here from that country; and that provided it could be done only in a prescribed and particularly enumerated class of cases. The effect of such a specification, according to well settled principles of construction, is to exclude the remedy from all but the enumerated cases. As to those not mentioned the negative is as effectually implied as though it had been expressly declared.

For that reason, when the defendant was extradited it was for the purpose of answering the crime mentioned in the proceedings taken against him, and for no other purpose whatsoever. As to all other matters, being beyond the reach of the laws of this state, he was absolutely entitled to his freedom. He was extradited for a single special purpose, that of being tried for the crime for the commission of which he was removed from the protection of the laws of France; beyond that he was entitled to the protection of those laws, so far as his personal liberty would have been secured by them in case no removal of his person had been made. In the language of the treaty, he was "delivered up to justice"

because he was accused of one of the crimes which it enume-
rated (*Vol.* 8 *U. S. Statutes at Large*, 582, *art.* 1; *id.*, 617).
And it was implied in his surrender that he should be at
liberty to return again to France when the purposes of jus-
tice had been performed in the charge made against him.
The nature of the treaty as well as good faith with the
foreign power entering into it will permit of no other con-
struction. That power consented, by the provision made, to
surrender the person, entitled in all other respects to its pro-
tection, for trial and punishment on a particularly specified
charge; and for no other end or object whatsoever. Without
the provision made he could not be extradited at all; and by
that it can only be done for a clearly defined object. And it
therefore becomes the duty of the power to which the sur-
render may be made, faithfully to secure its proper observ-
ance. For some purposes that has been expressly provided
by the act of congress requiring the president to take all
necessary measures for the protection of the extradited per-
son against lawless violence until the final conclusion of his
trial for the crimes or offenses specified in the warrant, and
until his final discharge from custody or imprisonment for or
on account of such crimes or offenses, and for a reasonable
time thereafter (*Vol.* 15 *U. S. Statutes at Large*, 337, § 1).
It is true that this provision does not in terms include the
present case, for it only extends to acts of lawless violence;
but it is cogent evidence of the spirit of the obligation rest-
ing upon the public authorities to restrict the restraint
imposed simply to the crime charged and mentioned in the
treaty. The obligation is no greater to protect the party
from lawless violence than it is to protect him from all other
detentions of his person.

After the purposes of justice are satisfied as to the particu-
lar offense for which the party may be surrendered, then his
right to return again to the protection of the laws he was
deprived of for the single object allowed by the treaty, is
clear and absolute.

Bacharach agt. Lagrave.

A different construction would involve consequences which no state having authority to protect its citizens or subjects, would be willing to submit to; for it would allow embarrassments and hardships that it could not be contemplated the authorities receiving them should be at liberty to inflict upon them. If the extradited person can be subjected to any further restraint than may appropriately appertain to the offense for which, under the terms of the treaty, he may be removed, he may be indicted and tried on criminal charges for which no surrender of his person could lawfully be required. And if that could be done, political offenders seeking refuge in one country could be returned on other charges, and then subjected to trial on accusations of that character, contrary to the policy of all civilized countries. Our own citizens are deeply interested in maintaining a construction of treaty stipulations which will be sure to avoid such abuses. And if a detention and trial for another offense would not be proper, it would seem to be clear that an arrest of the person at the private suit of another must be denied by the same principle. It is a consequence arising out of the implication that as to all but the extraditable offense, the accused shall enjoy the unrestrained liberty of returning to the country from which he was taken by force of the treaty provisions. Any different construction would be entirely unreasonable, and no enlightened nation would be willing to submit to it. It would be an abuse of the power provided for, allowing extradition only for clearly defined and particularly enumerated charges, and by necessary implication limiting it to those charges. If the power of detention and restraint is extended beyond them, then there is no obvious limit to which it cannot be carried; and a person brought into the country under the treaty for one purpose may be detained here indefinitely for an entirely different purpose. No people are more interested in denying such a latitude of oppression than our own; for, otherwise, our citizens could be forcibly taken abroad upon one charge, and detained there

Bacharach agt. Lagrave.

on the abandonment of that, upon others for which their extradition would never be consented to or allowed.

The principle in the case is an important one, and it necessarily grows out of these treaty stipulations with other countries. They are part of the supreme law of the state, superior to those of its own enactment, by an express provision of the constitution of the United States ( *U. S. Const., art. 6,* § 2). And it is the duty of the courts to maintain its observance. That cannot be done by allowing extradited persons to be arrested and restrained at the suits of private persons unless they elect to remain in the country after their discharge from the proceedings provided for by the treaty. In the absence of such election the person is entitled to full liberty, for the purpose of regaining his former habitation; and an arrest in a private action is entirely inconsistent with the preservation and enjoyment of that right. Process in no way interfering with that privilege may be properly sustained, but certainly nothing going beyond that.

The case of *Williams* agt. *Bacon* (10 *Wend.,* 636), arising under the constitution and laws of the United States relating to the removal of offenders from one state to another, may not harmonize with the views here expressed. If it does not, then it must so far be regarded as unsound, as it may very well be. Certainly no other principle than that securing immunity from arrest for causes not provided for by the treaty, can either fairly or reasonably be deduced from its purposes and provisions; and if this authority is inconsistent with that idea, then it should not be regarded as binding.

The order appealed from in this case, and that in the suit of Adriance and others argued with it, must be reversed, with ten dollars costs in each appeal, and orders entered setting aside the orders of arrest, &c.

DAVIS, P. J., and BRADY, J., concurred.

NOTE.—The able opinion given above is unquestionably correct, assuming, as the court does, that the extradition proceedings under which the

Bacharach agt. Lagrave.

defendant was brought here were valid and lawful. But this seems to be the most important point in this case. Judge FANCHER, when this case was before him on *habeas corpus* (45 *How. Pr. R.*, 301), *held*, that the defendant had not, as the proofs showed, committed any crime for which, under the treaty between the United States and France, he could be demanded by the one government or extradited by the other. The defendant was charged and indicted for an offense which, by our New York statute, is defined as burglary in the third degree. This is only a statutory offense, and was not known to the common law. The common-law offense of burglary is not charged, nor does the indictment allege it; nor does the treaty between the United States and France provide for the demand and extradition of a fugitive for our statutory offense of burglary in the third degree. The treaty refers to the common-law offense of burglary. It is plain that, under the facts and circumstances touching the extradition of the defendant, and the bringing of him forcibly from France to the United States, the whole proceeding was unauthorized and illegal. He was seized and kidnapped in France through the instrumentality of J. M——, an alleged detective, and by him was forcibly brought to the United States on the French steamer "Washington," without any charge having been made for which he could lawfully be extradited. The judge also says that where a prisoner is without the jurisdiction of the court, and is, by force or fraud, brought within it, he cannot be arrested and proceeded against in a civil action, at the suit of any party concerned in bringing him within such jurisdiction, and discharged the defendant from arrest in such actions; but said that it was no ground for discharging a prisoner from arrest, in a *criminal matter*, that he had been forcibly brought within the jurisdiction, and remanded the defendant for trial on the indictment for burglary in the third degree.

Now, from the opinion of judge DANIELS, we think this was error; for he says that if the extradited person can be subjected to any further restraint than may appropriately appertain to the offense for which, under the terms of the treaty, he may be removed, he may be indicted and tried on criminal charges for which no surrender of his person could lawfully be required. And if that could be done, political offenders seeking refuge in one country could be returned on other charges, and then subjected to trial on accusations of that character, contrary to the policy of all civilized countries. Our own citizens are deeply interested in maintaining a construction of treaty stipulations which will be sure to avoid such abuses. And if a detention and trial for another offense would not be proper, it would seem to be clear that an arrest of the person at the private suit of another must be denied by the same principle. It is a consequence arising out of the implication that, as to all but the extraditable offense, the accused shall enjoy the unrestrained liberty of returning to the country from which he was taken by force of the treaty provisions. Any different

construction would be entirely unreasonable, and no enlightened nation would be willing to submit to it.

It seems clear, therefore, from this reasoning and argument of judge DANIELS, that where the defendant is kidnapped, and forcibly and against his will brought here without any treaty stipulation, or, which is the same thing, one procured through fraud and deceit, and void on its face as being for a crime not recognized by any treaty stipulation, the defendant is entitled at once to his unrestrained liberty to return to his native country and the protection of its government.—[REP.